## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GRAYLYN JACKSON #131142**                    **CIVIL ACTION**

**versus**                                     **NO. 06-4292**

**BURL CAIN, WARDEN**                          **SECTION: "D" (1)**

### REPORT AND RECOMMENDATION

        This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Graylyn Jackson, is a state prisoner incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana.  On May 12, 1999, he was convicted of eight counts of armed robbery in violation of La.Rev.Stat.Ann. § 14:64.[2]  On August 17, 1999, he was sentenced on each count to a term of forty-nine years imprisonment without benefit of parole, probation, or suspension of sentence.  It was ordered that his sentences run concurrently and that he be given credit for time served.[3]  He was subsequently found to be a multiple offender and was resentenced as such on each count to a term of sixty-five years imprisonment without benefit of parole, probation, or suspension of sentence.[4]  On July 25, 2000, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction on seven counts.  With respect to the remaining count, the court modified the conviction, reducing it to a conviction for attempted armed robbery, and affirmed that conviction as modified.  Lastly, the court found that petitioner was wrongly sentenced as a multiple offender on each count and remanded the matter for resentencing on all counts.[5]  Petitioner then filed with the Louisiana Supreme Court a related writ application which was denied on October 5, 2001.[6]

---

[2] State Rec., Vol. IV of V, transcript of May 12, 1999, pp. 213-14; State Rec., Vol. II of V, minute entry dated May 12, 1999; State Rec., Vol. III of V, jury verdict form.

[3] State Rec., Vol. I of V, transcript of August 17, 1999; State Rec., Vol. II of V, minute entry dated August 17, 1999.

[4] State Rec., Vol. I of V, transcripts of October 12 and 14, 1999; State Rec., Vol. II of V, minute entries dated October 12 and 14, 1999.

[5] State v. Jackson, 767 So.2d 848 (La. App. 5th Cir. 2000) (No. 99-KA-1256); State Rec., Vol. I of V.

[6] State v. Jackson, 798 So.2d 960 (La. 2001) (No. 2000-KO-2528); State Rec., Vol. V of V.

While that writ application was pending, petitioner was resentenced on September 1, 2000, on each of the seven counts of armed robbery to a term of forty-nine years imprisonment without benefit of parole, probation, or suspension of sentence.  He was resentenced on the attempted armed robbery conviction to a term of twenty-five years imprisonment without benefit of parole, probation, or suspension of sentence.  It was again ordered that his sentences run concurrently and that he be given credit for time served.[7]  He again appealed, and, on June 27, 2001, the Louisiana Fifth Circuit Court of Appeal affirmed his sentences.[8]

In September, 2002, petitioner filed with the state district court an application for post-conviction relief.[9]  That application was denied on March 14, 2005.[10]  His related writ applications were likewise denied by the Louisiana Fifth Circuit Court of Appeal on April 21, 2005,[11] and the Louisiana Supreme Court on March 17, 2006.[12]

---

[7] State Rec., Vol. I of V, transcript of September 1, 2000; State Rec., Vol. I of V, minute entry dated September 1, 2000.

[8] State v. Jackson, 790 So.2d 720 (La. App. 5th Cir. 2001) (No. 01-KA-129); State Rec., Vol. V of V.

[9] State Rec., Vol. V of V.

[10] State Rec., Vol. V of V, Order dated March 14, 2005; State Rec., Vol. I of V, minute entry dated March 14, 2005.

[11] Jackson v. Cain, No. 05-KH-405 (La. App. 5th Cir. Apr. 21, 2005) (unpublished); State Rec., Vol. V of V.

[12] State ex rel. Jackson v. State, 925 So.2d 534 (La. 2006) (No. 2005-KH-1728); State Rec., Vol. V of V.

On June 30, 2006, petitioner filed this federal application for *habeas corpus* relief.[13] In support of his application, he raises the following claims:

1.      Petitioner was denied his right to trial by an impartial jury;

2.      Petitioner was denied his right to present witnesses on his behalf;

3.      The prosecution presented perjured testimony;

4.      Petitioner was denied his right against self-incrimination;

5.      The trial court improperly admitted witness statements that were the product of threats, inducements, and coercion; and

6.      Petitioner received ineffective assistance of counsel.

The state concedes that petitioner's federal application is timely and that he exhausted his state court remedies.[14]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

---

[13] Rec. Doc. 1.

[14]   Rec. Doc. 6, p. 3.

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On the first direct appeal, the Louisiana Fifth Circuit Court of Appeals summarized the facts of this case as follows:

On the night of October 9, 1998, twelve to fourteen women were engaged in a card game at the apartment of Kayyonna Hayes. Late in the evening, two men later identified as co-defendants Travis Frank and Colin Duhe entered the apartment wearing disguises over their faces.  The men pointed handguns at the women and demanded money.  Carla Allen, one of the hosts of the party, replied that she had no money.  The two men took money and jewelry from several of the women before fleeing the scene.

Erica Hill, one of the victims, followed the two gunmen out of the apartment.  She observed them jump into the car owned by Kayyonna Hayes, which was being driven by Graylyn Jackson.  Hill then called the police and reported the robbery.

Jackson, Duhe, Frank and a fourth man, Bernell Perrilloux, split the cash stolen from the women.  After dropping Frank off at home, the remaining three men were involved in a high-speed chase with a member of the St. John the Baptist Parish Sheriff's Office.  The three men dumped the car and fled on foot.  The car was impounded.

On October 10, 1998, Jackson was arrested in connection with the robbery. ...  Duhe and Frank turned themselves in to the police and gave recorded statements implicating that Jackson was not only involved in the robbery, but that he planned it and gave them the weapons.[15]

<u>Denial of the Right to an Impartial Jury</u>

Petitioner claims that two non-jurors informed the jury panel that there were three other co-defendants involved in this case who pled guilty.  During voir dire, prospective juror Marguerite Bleakley informed the judge that she had heard something about the case.  A bench conference was then held, at which time Bleakley reported that she and Deanna Weber, another prospective juror, overheard someone who worked with the court say that four people were involved in the case and that three of them had already pled guilty.  Ms. Weber was then called to the bench.

---

[15]  <u>State v. Jackson</u>, 767 So.2d 848, 850 (La. App. 5th Cir. 2000) (No. 99-KA-1256); State Rec., Vol. I of V.

She reported that a lady who apparently worked for the court came in and made the statement "to everybody in the courtroom."  Weber also reported that her daughter also came into the courtroom afterwards and made a similar statement.  At that point, the court recessed and an off-the-record conference was held in chambers.  Immediately thereafter, Weber was excused.[16]

Petitioner argues that the trial judge erred in handling the examination into the matter *ex parte*.  As an initial matter, this Court notes that, even if the examination had been conducted *ex parte*, "there is no blanket prohibition against the *ex parte* examination of jurors by a trial judge." United States v. Brantley, 68 F.3d 1283, 1291 (11th Cir. 1995).[17]  However, in any event, the transcript reflects that the examination was not conducted *ex parte*.  To the contrary, the transcript reflects that defense counsel was present at the bench conference during the examination and, in fact, was the one who requested that the matter be moved to chambers for further discussion.[18]  Therefore, petitioner's claim that the judge held the examination *ex parte* is wrong as a matter of fact and, accordingly, his claim necessarily fails.

<u>Disqualification of Defense Witness</u>

Petitioner claims that the trial court erred in refusing to allow petitioner's mother to testify at trial after she violated the court's sequestration order.

---

[16]  State Rec., Vol. IV of V, transcript of May 11, 1999, pp. 72-82.  Bleakley also was not selected to serve on the jury.

[17]  Moreover, even in those instances where such actions would constitute error, that error "may be harmless if the court takes sufficient precautions to ensure against prejudice to the [defendant's] interests."  Brantley, 68 F.3d at 1291; see also Rushen v. Spain, 464 U.S. 114, 119 (1983).

[18]  State Rec., Vol. IV of V, transcript of May 11, 1999, p. 81.

The record reflects that when petitioner's mother, Carolyn Jackson, was called to

testify, the prosecutor requested a bench conference.  After an off-the-record discussion, the jury was

excused and the following transpired:

THE COURT:
    All right.  Let's take up the issue of the defense witness, the first defense witness.  The Defense has called this lady, Carolyn Jackson.  Ms. Jackson is Graylyn Jackson's mother.  That's my understanding.

MR. MICELI:
    That's correct, Judge.

THE COURT:
    All right.  I've noticed that Ms. Jackson has been in the courtroom both days for the trial, and I recall that she was in the courtroom when I gave the sequestration order against persons remaining in the courtroom who were going to testify, all right.  So let's take it from there.
    The pertinent Article is Article 615 of the Code of Evidence.  At this time, Mr. Miceli, before you give any argument, why don't you proffer for the Record what you anticipate Ms. Jackson's going to testify to.

MR. MICELI:
    Judge, Ms. Jackson's going to testify in relation to letters written to her, presumably from Colin Duhe and Travis Frank.  She's going to testify that she - that Graylyn was arrested and incarcerated on Saturday, October 10th; that she visited Graylyn that following Tuesday, was told that visiting day was Thursday.  She came back that Thursday, and while visiting Graylyn through the window, Colin and Travis were both present at the window as well.  She spoke to both parties through the window on the telephones, and both Colin and Travis informed her that they would be sending her a letter indicating that Graylyn had nothing to do with the armed robbery.  Within two days she received a letter from both Travis and Colin stating that she (sic) was coerced by police to implicate Graylyn in the armed robbery, also indicating that they were offered significantly less time by implicating Graylyn.  That they were told they would receive between 55 and 990 years if they did not implicate Graylyn

- 8 -

and would receive somewhere between 6 months and a year if they did implicate Graylyn.

And I think it becomes quite significant when both parties stated that once – I believe Travis said he signed a blank piece of paper, but he didn't sign the letters; and Colin testified that he signed the letters, but did not write them. We know the letters were sent to the Jackson family, to this Court, and to the District Attorney's Office. Both letters were written in different handwritings. All the letters written by Colin Duhe are consistent. All the letters written by Travis Frank are consistent.

THE COURT:

In handwriting?

MR. MICELI:

In handwriting, yes, sir.

THE COURT:

All right. If I were hearing some of that testimony, some I would allow, some I would suspect would provoke an objection, which I would probably grant, the hearsay items, opinions as to handwritings.

MR. MICELI:

That's correct.

THE COURT:

All right. What do you feel the appropriate remedy for the Court is?

MR. MICELI:

Judge, I believe that you can admonish the jury that Ms. Jackson was present during some testimony and make them aware that she heard the testimony of both Travis and Colin, and that she's testifying, and they can either believe her or not believe her.

THE COURT:

All right, you'd like a cautionary instruction then.

MR. MICELI:

Yes, sir.

THE COURT:

    All right. Is there anything else you want to add before I receive the State's argument?

MR. MICELI:

    Well, sir.  I believe to disqualify the witness would be violative of Mr. Jackson's Sixth Amendment Right to present witnesses on his own behalf and provided a fair and impartial hearing.  I think that Mr. Jackson should not suffer for the incompetence of Counsel, and if I messed up, Mr. Jackson shouldn't suffer for that.  I did not anticipate calling Ms. Jackson to the stand, and subsequent to Colin and Travis' testimony, I decided it may be best to call Ms. Jackson for the purpose of rebuttal of Colin and Travis' testimony.  I asked her to leave the courtroom at that time, and she has not been here since then.

THE COURT:

    Since when?

MR. MICELI:

    Since Colin and Travis' testimony.

MS. McELWEE:

    Are you ready for the State's response, Your Honor?

THE COURT:

    It's my understanding, and we can clear this up with sworn testimony, but I think I've seen her here the whole time.

MR. MICELI:

    I know I asked her to leave the courtroom.  She hasn't been in the courtroom.

THE COURT:

    Since when?  When did you ask her to leave the courtroom?

MR. MICELI:

    This morning, Judge.

THE COURT:

    What time?

MR. MICELI:

      I'm sorry.  I don't know the time, Judge.

MS. McELWEE:

      Judge, if we're going to talk any more about Ms. Jackson, I'd like her to leave.  I'd like the record to reflect she's been in court the entire time.

THE COURT:

      All right.  Ms. Jackson, would you step outside for a moment, please.  We'll come and get you when we need you.  Go ahead.

MS. McELWEE:

      Judge, I think what's significant about this, and the State is asking for no less than a disqualification of her as a witness.  Colin Duhe testified a couple of months ago that he didn't write that letter, but that that was his signature, and he didn't write the letter.  So this didn't just come up today when Colin Duhe and Travis Frank testified.  It came up today when she heard the testimony and figured out a way to help her son out, which is what she's coming forward with now.

MR. MICELI:

      Judge, objection, Judge.

THE COURT:

      No.  This is an argument.  This is not testimony.  Go ahead.

MS. McELWEE:

      And I think that's the significant point that the Court needs to consider.  This was – This was never going to be offered as testimony until this lady sat in here and figured out a way to help out her son.

MR. MICELI:

      Judge, I've never heard Colin or Travis testify that that wasn't their letters.  I mean if that happened a few months back, I wasn't in the courtroom when it happened.

MS. McELWEE:

      Well, that's not the State's fault if the attorney wasn't here when this case was being handled.

THE COURT:

    They did testify to that in a prior hearing.

    All right.  Mr. Miceli, I don't find any incompetence on your part.  I can't imagine that Mr. Jackson has waited until the trial to decide that he would like his mother to testify.  This is something, I would imagine, that could have been reasonably decided long before this trial.

    All right, I've heard both sides.  ...[19]

At that point, after additional discussion, it was decided that it was unnecessary to have testimony regarding the specific points at which Ms. Jackson was in fact present during trial.  The trial judge then ruled:

THE COURT:

    All right.  I'm going to make the following findings.  On my own observation I have noticed Ms. Jackson in the courtroom yesterday and today.  I know she was in here when I gave the sequestration order and instruction to the persons in the courtroom.

    In looking at the appropriate sanctions, I do not feel that it would be appropriate for me to hold Ms. Jackson in contempt.  She's an elderly lady.  I don't want to put her in jail.  The next sanction would be an appropriate instruction to the jury.  This Court feels that giving a cautionary instruction to the jury would not erase the taint of the witness or a witness who has sat in the courtroom and listened to all the State's witnesses testify.  Accordingly, the Court feels that these two sanctions are not appropriate and will therefore grant the sanction of disqualifying Ms. Jackson from testifying.[20]

The United States Fifth Circuit Court of Appeals has held:

While it is generally true that a witness should not be disqualified for [violation of a sequestration order] alone, "the right to exclude under *particular circumstances* may be supported as within the sound discretion of the trial court."  Holder v. United States, 150 U.S. 91, 92, 14 S.Ct. 10, 10, 37 L.Ed. 1010, 1010 (1893) (emphasis added).

---

[19]  State Rec., Vol. IV of V, transcript of May 12, 1999, pp. 123-29.

[20]  State Rec., Vol. IV of V, transcript of May 12, 1999, pp. 130-31.

This court's assessment of the situations which will justify exclusion is set out in <u>Braswell v. Wainwright</u>, 463 F.2d 1148 (5th Cir. 1972):

> Upon the particular circumstances of each case the trial judge must weigh the exclusion of the witness against the defendant's right to obtain witnesses in his behalf.  Where the defendant has been advised of his constitutional right and there has been a knowing intelligent waiver by the defendant, exclusion would be permissible.   And perhaps the consent, procurement, or knowledge on the part of defendant or his counsel might rise to the level of a waiver and thus render exclusion proper. <u>Id</u>. at 1155.

<u>Calloway v. Blackburn</u>, 612 F.2d 201, 204 (5th Cir. 1980).

In the instant case, the Court rejects the contention that the disqualification of Ms. Jackson was improper.  The Court gives little credence to Miceli's statement that he did not all along intend on calling Ms. Jackson to testify.  The record establishes that Miceli had advance notice that both Duhe and Frank were scheduled to testify on behalf of the prosecution.[21] The record further establishes that, despite Miceli's assertion to the contrary at trial, he was indeed present at the prior proceedings when Duhe and Frank stated that they did not write the letters at issue.[22]  It is therefore unlikely that Miceli had no inkling that he would want to call Ms. Jackson at trial to impeach Duhe and Frank.  It is further evident from the record that Miceli was aware both of the sequestration

---

[21]  They were even identified as prosecution witnesses during voir dire.  State Rec., Vol. IV of V, transcript of May 11, 1999, p. 30.  Miceli declined to identify his witnesses during voir dire. State Rec., Vol. IV of V, transcript of May 11, 1999, p. 41.

[22]  State Rec., Vol. II of V, transcript of March 25, 1999, p. 56; State Rec., Vol. III of V, transcript of March 29, 1999, pp. 74-76.

order[23] and of the fact that Ms. Jackson was in the courtroom during the testimony of Duhe and

Frank.[24]   Accordingly, in light of the foregoing, the Court finds that Miceli's actions amounted to

consent and knowledge on his part so as to constitute a waiver and thus render Ms. Jackson's

exclusion proper.

<u>Perjured Testimony</u>

Petitioner contends that his rights were violated when the prosecution presented the

perjured testimony of various witnesses.   The state district court rejected petitioner's claim.[25]

Because the claim presents a mixed question of law and fact, this Court must defer to that decision

unless petitioner demonstrates that the decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1); <u>Fairman v. Anderson</u>, 188 F.3d 635, 640 (5th Cir. 1999).  Petitioner

has made no such showing in the instant case.

In this claim, petitioner simply argues that the witnesses' trial testimony was in some

respects inconsistent with their prior statements and testimony.   However, for a petitioner to

establish that his constitutional rights have been violated by the introduction of perjured testimony,

"it is not enough that the testimony is challenged by another witness or is inconsistent with prior

---

[23]  State Rec., Vol. IV of V, transcript of May 11, 1999, pp. 181-82.

[24]  State Rec., Vol. IV of V, transcript of May 12, 1999, p. 129.

[25]  State Rec., Vol. V of V, Order dated March 14, 2005; State Rec., Vol. I of V, minute entry dated March 14, 2005.  The Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme Court likewise denied the claim without assigning reasons.  <u>Jackson v. Cain</u>, No. 05-KH-405 (La. App. 5th Cir. Apr. 21, 2005) (unpublished); <u>State <i>ex rel.</i> Jackson v. State</u>, 925 So.2d 534 (La. 2006) (No. 2005-KH-1728); State Rec., Vol. V of V; State Rec., Vol. V of V.

statements." Kutzner v. Cockrell, 303 F.3d 333, 337 (5th Cir. 2002).   Rather, a petitioner "must show (1) the *actual falsity* of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution *knew* the witness's testimony was false." Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001) (emphasis added).   Even assuming that the trial testimony in question was material, petitioner has presented no evidence whatsoever that the trial testimony was in fact false, much less that the prosecution knew it was false.  Accordingly, petitioner has not met his burden of proof with respect to this claim and, therefore, the claim necessarily fails.

## Self-Incrimination

Petitioner next claims that he was denied his right against self-incrimination.  He contends that the statement he gave to the police was involuntary because it was procured by fear, threats, intimidation, coercion, promises, and inducements.

The Court need not reach the issue of whether the statement was improperly procured because, in any event, the statement was not introduced or referenced during the trial.  Therefore, petitioner's claim necessarily fails.  See United States v. McNeal, 463 F.2d 1180, 1182 (5th Cir. 1972); United States v. Harrison, 461 F.2d 1127, 1131-32 (5th Cir. 1972); see also United States v. Minjares-Alvarez, 264 F.3d 980, 984 (10th Cir. 2001); United States v. Jones, 275 F.3d 673, 679 (8th Cir. 2001); United States v. Alvarado-Delgado, 98 F.3d 492, 494 (9th Cir. 1996).

## Witness Statements

Petitioner argues that the statements of co-defendants Colin Duhe and Travis Frank implicating petitioner resulted from police threats, inducements, and coercion and, therefore, should not have been admitted at trial.

At trial, Travis Frank testified that he and Colin Duhe committed the robbery at issue. He further testified that petitioner planned the robbery and drove the getaway car.  Regarding his motivation for testifying, Frank testified on direct examination as follows:

> Q.      Now why are you hear [sic] testifying today?
>
> A.      To finally let the truth out, finally let what happened.
>
> Q.      Did you make a deal with me to come and testify?
>
> A.      Yes, ma'am.
>
> Q.      And in return for me amending the charge to simple robbery you're facing a lot less time, aren't you?
>
> A.      Yes, ma'am.
>
> Q.      But you're still facing up to five years in jail.
>
> A.      Yes, ma'am.[26]

On redirect examination, Frank further testified as follows:

> Q.      I'm just asking, are you testifying that Graylyn Jackson planned this robbery and got you and Colin Duhe involved in the robbery because the police made you say that or because it's true?
>
> A.      Oh, he did do it that night.  But at the same time the police did, um, tell us to implicate Graylyn Jackson.  But I'm telling this version of the story, because that's what really happened that night of the card game on October 10th, that morning.
>
> Q.      The police told you to give a statement implicating Graylyn Jackson?

---

[26]  State Rec., Vol. IV of V, transcript of May 12, 1999, p. 16.

    A.       Oh, they didn't told us give a statement implicating Graylyn Jackson.  They just told us give us a statement, and if Graylyn Jackson had anything to do with it, tell them the truth, don't lie for Graylyn Jackson.  That's what they said.

    Q.       And when you gave the statement, gave this statement to the police at the time of your arrest eight months ago, were you telling this because it was the truth or because of what anybody was forcing you to do?

    A.       Oh, I was telling them that was the truth, the statement I gave right there.

    Q.       And is this statement the truth today?

    A.       Yeah, it's still the truth.[27]

Colin Duhe likewise testified that he and Frank committed the robbery at petitioner's instigation.  He also testified that his prior statement to that effect and his trial testimony were true and voluntary.  On direct examination, he testified:

    Q.       Mr. Duhe, is what your testifying to today the same as what's in your statement that was given eight months ago?

    A.       Yes, it is.

    Q.       Is this statement and your testimony today the truth?

    A.       Yes.

    Q.       Did you give this statement to the police because they forced you or because it was the truth?

    A.       It was the truth.  What I had told, um, the Judge in the hearing, I was supposed to give the statement, but it was the truth.

---

[27]  State Rec., Vol. IV of V, transcript of May 12, 1999, pp. 25-26.

> Q.    Nobody forced you to tell them that Graylyn Jackson planned this armed robbery?
>
> A.    Nobody told me that.[28]

On cross-examination, he likewise acknowledged that he was also allowed by the prosecution to plead guilty to a lesser crime and face a maximum sentence of five years.[29]

Based on the foregoing sworn testimony of both Frank and Duhe, it is clear that neither their prior statements nor trial testimony resulted from police threats or coercion.  While both Frank and Duhe were allowed to plead guilty to a lesser crime, thereby drastically reducing their sentencing exposure, in exchange for their truthful testimony at trial, such agreements are permissible.  See United States v. Orr, 136 Fed. App'x 632, 637 (5th Cir. 2005); United States v. Haese, 162 F.3d 359, 368 (5th Cir. 1998).  "Moreover, the jurors were adequately informed during direct and cross-examination about the coconspirators' motivation for testifying, and the jury was free to believe or disbelieve their testimony."  United States v. Valdez, 453 F.3d 252, 257 (5th Cir. 2006).  Simply put, petitioner has failed to establish any federal constitutional violation with respect to this claim.

Ineffective Assistance of Counsel

Petitioner next claims that his counsel was ineffective.  When this claim was presented in the state post-conviction proceedings, it was rejected.[30]

---

[28]  State Rec., Vol. IV of V, transcript of May 12, 1999, pp. 37-38.

[29]  State Rec., Vol. IV of V, transcript of May 12, 1999, p. 45.

[30]  State Rec., Vol. V of V, Order dated March 14, 2005; State Rec., Vol. I of V, minute entry dated March 14, 2005.  The Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme

- 18 -

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>See id</u>. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. <u>See Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. <u>See Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>. In making a

_____

Court likewise denied the claim without assigning reasons. <u>Jackson v. Cain</u>, No. 05-KH-405 (La. App. 5th Cir. Apr. 21, 2005) (unpublished); <u>State ex rel. Jackson v. State</u>, 925 So.2d 534 (La. 2006) (No. 2005-KH-1728); State Rec., Vol. V of V; State Rec., Vol. V of V.

determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner first argues that defense counsel was ineffective in failing to challenge or strike several of the prospective jurors during voir dire.  Specifically, petitioner claims that counsel should have challenged or struck prospective jurors Dennis Kranz, Brigitte Williams, Robert Bascle, and Jeremy Pitchford because they or their family members had been victims of crime in the past. Petitioner additionally claims that counsel should have challenged or struck Brigitte Williams because she was a friend of one victim's mother and knew two of the other victims.

While counsel could have tried to have the prospective jurors removed for cause[31] and, failing that, have struck them using peremptory challenges, his failure to do so does not mean that he performed deficiently.  The United States Fifth Circuit Court of Appeals has observed, "The selection of a jury is inevitably a call upon experience and intuition.  The trial lawyer must draw upon his own insights and empathetic abilities.  Written records give us only shadows for measuring the quality of such efforts."  Romero v. Lynaugh, 884 F.2d 871, 878 (5th Cir. 1989).  Further, the Fifth Circuit has held:

> [An] attorney's actions during voir dire are considered to be a matter of trial strategy.  A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.

Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995) (quotation marks omitted).  In this case, petitioner has made no such showing.  Rather, the transcript reflects that Kranz, Williams, Bascle,

---

[31]  "The standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  Soria v. Johnson, 207 F.3d 232, 242 (5th Cir. 2000) (internal quotation marks omitted).  However, neither federal nor Louisiana law requires that prospective jurors be excused for cause simply because they or their relatives have been crime victims.  See, e.g., United States v. Huddleston, 810 F.2d 751, 753 (8th Cir. 1987); United States v. Jones, 608 F.2d 1004, 1008 (4th Cir. 1979); State v. Jones, 381 So.2d 416, 417 (La. 1980); State v. Eskano, 779 So.2d 148 (La. App. 5th Cir. 2001).  Similarly, neither federal nor Louisiana law requires that a prospective juror be excused for cause simply because she knows the victims or their relatives.  See, e.g., Montoya v. Scott, 65 F.3d 405, 419-20 (5th Cir. 1995); United States v. McLeod, 53 F.3d 322, 326 (11th Cir. 1995); Celestine v. Blackburn, 750 F.2d 353, 358-61 (5th Cir. 1984); State v. Allen, 682 So.2d 713, 724 (La. 1996); State v. Hopkins, 908 So.2d 1265, 1278-79 (La. App. 2nd Cir. 2005); State v. Owens, 567 So.2d 806 (La. App. 3rd Cir. 1990); State v. Gibson, 505 So.2d 237, 240 (La. App. 3rd Cir. 1987).

and Pitchford all indicated that they could be fair, unbiased, and follow the law.[32]  From the cold record before it, this Court will not second-guess counsel's assessment of the truthfulness of those representations or his professional opinion as to the desirability of the individuals as jurors in this particular case.

Petitioner next argues that counsel was ineffective in failing to object to the prosecutor's opening statement.  Specifically, petitioner contends that counsel should have objected to the following statement:

> Erica Hill, one of the victims, follows the two robbers out of the house when they leave and run out of the card game.  She follows them outside, gets into another victim's car and goes after them to find where they're going, and she sees them get in the car that is driven by Graylyn Jackson.[33]

Petitioner contends that counsel also should have objected to the following statement:

> [A] St. John police officer, Murray Franks, spots the car in St. John Parish.  He gets behind the car and starts chasing it.  The car doesn't pull over.  There's a high-speed chase for a while, and then Graylyn Jackson, Colin Duhe and a third man bail out of the car.[34]

Louisiana law provides:  "The opening statement of the state shall explain the nature of the charge, and *set forth, in general terms, the nature of the evidence by which the state expects to prove the charge*."  La.C.Cr.P. art. 765 (emphasis added).  The transcript reflects that these challenged statements were in fact accurate predictions of the testimony actually adduced at trial.

---

[32]  State Rec., Vol. IV of V, transcript of May 11, 1999, pp. 36, 50-51, and 55-57.

[33]  State Rec., Vol. IV of V, transcript of May 11, 1999, pp. 198-99.

[34]  State Rec., Vol. IV of V, transcript of May 11, 1999, pp. 199.

Hill testified that, after the robbery, she followed the robbers and saw them run to a waiting getaway car driven by petitioner.[35] Franks then testified that he engaged in a high speed chase of the getaway car. He further testified that the car had been occupied by three black males who fled on foot after the car reached a dead end.[36] Accordingly, the prosecutor's statements were proper, and therefore counsel cannot be considered to have performed deficiently in failing to object to them.

Petitioner next argues that counsel was ineffective in failing to object when the prosecution allegedly elicited testimony regarding other crimes. Under Louisiana law, evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." La. Code Evid. art. 404(B). In the instant case, the prosecution did not directly move to introduce evidence of other crimes; rather, petitioner's claim concerns offhand comments made by various witnesses during their direct examination.

The Court rejects petitioner's contention that "other crimes" evidence was even elicited. Petitioner's claim in the instant case involves various responses by witnesses to perfectly proper questions as to whether anything unusual happened during the card game or if petitioner was present at any point during the game. Erica Hill testified that petitioner's girlfriend told him "about a guy coming to look for him about, something about, uh, drugs or something ...." Petitioner claims that comment indicates that "he was involved with drugs."[37] However, the Court disagrees that Hill's vague comment explicitly or directly implicated petitioner in illegal drug activity. Petitioner

---

[35] State Rec., Vol. IV of V, transcript of May 11, 1999, pp. 212-14.

[36] State Rec., Vol. IV of V, transcript of May 12, 1999, pp. 89-90.

[37] Rec. Doc. 1, p. 29.

also notes that Erica Hill, Tyra Hill, and Vivian Scott all made brief references in their testimony to the fact that petitioner left the card game with a gun.  However, possession of a gun is not generally illegal.  Absent evidence at trial from which the jury could conclude that it would in fact have been illegal for petitioner to possess a gun, there is no basis for interpreting the comments as a reference to criminal activity.

In light of the foregoing, the Court is unconvinced that the references to the "drugs or something" and to petitioner's possession of a gun violated La. Code Evid. art. 404(B).  Nevertheless, even if article 404 was arguably violated, it does not necessarily follow that petitioner's counsel was ineffective in failing to lodge an objection.  See Morris v. State of California, 966 F.2d 448, 456 (9th Cir. 1991) ("An attorney's failure to object to the admission of inadmissible evidence is not necessarily ineffective.");  Rose v. Johnson, 141 F.Supp.2d 661, 683 (S.D. Tex. 2001); Rios-Delgado v. United States, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000) ("Generally speaking, a failure to object, standing alone, do not rise to the level of constitutionally deficient performance.").  Rather, counsel's decision regarding whether to lodge an objection is normally considered a matter of trial strategy which will not be second-guessed.  Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993).  Such restraint is particularly appropriate here, where the references were fleeting and generally inconsequential.  If counsel had objected, he would have inevitably invited the jurors to focus their attention on matters unfavorable to the defense.  Counsel can hardly been deemed to have performed deficiently in choosing to avoid that adverse consequence here.

Petitioner next argues that counsel was ineffective in failing to obtain a copy of Erica Hill's taped statement to the police.  At trial, Hill testified that she recognized petitioner as the driver of the getaway car.  On cross-examination, defense counsel attempted to impeach Hill with a transcript of that statement indicating that she stated  she "didn't get a look at the driver."  Hill then testified that the transcript was inaccurate.[38]  Petitioner argues that if counsel had obtained a copy of the statement he could have successfully impeached Hill on that point.  However, that would be true *only* if the taped statement was *in fact* contrary to Hill's trial testimony.  Petitioner, who bears the burden of proof with respect to this claim, has never demonstrated that the tape would establish that fact.  Without such a showing, he cannot demonstrate that he was prejudiced by counsel's failure to obtain the tape and, therefore, his claim necessarily fails.

Petitioner next argues that counsel should have secured a expert in handwriting analysis to impeach the testimony of Frank and Duhe denying that they wrote letters saying petitioner was not involved in the robbery.  The United States Fifth Circuit Court of Appeals has noted:

> [U]nsupported claims regarding [an] uncalled expert witness are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel.

Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).  To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner must show that the testimony would have been favorable.  Id.  Petitioner furnished neither the state court nor this Court any evidence to show that any expert in handwriting analysis would have concluded and testified

---

[38]  State Rec., Vol. IV of V, transcript of May 11, 1999, pp. 221.

that the letters at issue were in fact written by Frank and Duhe.  Petitioner has, therefore, failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to call such an expert witness.

Petitioner similarly argues that counsel was ineffective in failing to properly investigate, interview, and call to testify additional alibi witnesses.  A petitioner asserting a claim for inadequate investigation bears the burden to provide *factual support* for his allegations as to what further investigation would have revealed.  Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998).  Because petitioner has provided no factual support for the contentions he makes with respect to this claim, such as affidavits from the proposed witnesses supporting an alibi defense, his inadequate investigation claim necessarily fails.  Similarly, again, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'"  Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  Petitioner has never brought forth any evidence in support of his bald assertions that the proposed witnesses would have testified in a manner consistent with petitioner's contentions or, for that matter, that they would have testified at trial at all.  Therefore, petitioner has again failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to call the proposed witnesses.

For all the foregoing reasons, the Court finds that petitioner has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States.  Applying the AEDPA's deferential standard, this Court likewise rejects those claims.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Graylyn Jackson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this fifth day of June, 2007.

_____

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**